The HUMANE SOCIETY OF
the UNITED STATES, et
al., Plaintiffs,

v.

Bruce H. BABBITT, et al., Defendants.

Civ. A. No. 94–0296–LFO.

United States District Court,
District of Columbia.

March 29, 1994.

Ray S. Bolze, Margaret H. Fitzsimmons, Alice M. Crook, Howrey & Simon, Washington, DC, for plaintiffs.

Teri R. Thomsen, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiffs, two environmental groups, brought this action to enjoin the defendant Secretary of the Interior from enacting a provision of a regulation that restricts importation of certain exotic birds. Plaintiffs claim the provision, which has passed through notice-and-comment procedures, violates the language of the Wild Bird Conservation Act of 1992. Plaintiffs have applied for a preliminary injunction. Defendants have opposed plaintiffs' application, and both parties have agreed that their filings may be treated as cross-motions for summary judgment. A hearing took place on March 7, 1994. For the reasons stated herein, an accompanying Order enters a declaratory judgment that the contested regulation is invalid and denies without prejudice plaintiffs' application for a preliminary injunction.

### I.

The Wild Bird Conservation Act of 1992, 16 U.S.C. § 4901 *et seq.,* (the "Act"), is intended "to conserve birds in the wild in order to protect their genetic diversity and the

integrity of the ecosystem in which they are found." H.Rep. No. 102–749(I), 102nd Cong., 2d Sess. 8, U.S.Code Cong. & Admin.News 1992, pp. 1592, 1593. Another purpose of the Act is to protect birds in commercial transit from inhumane treatment. *See* 16 U.S.C. § 4902(3). The Act was Congress' response to a concern that "[p]opulations of many species of exotic wild birds ... have declined dramatically due to habitat loss and the public's demand for pet birds." H.Rep. No. 102–749(II), 102nd Cong., 2d Sess. 7, U.S.Code Cong. & Admin.News 1992, pp. 1592, 1610; 16 U.S.C. § 4901(1).

Among other measures, the Act places a one-year moratorium on "the importation of any exotic bird of a species that is listed in any appendix" to the Convention on International Trade in Endangered Species of Wild Fauna and Flora. 16 U.S.C. § 4904(c). The Convention has three appendices that list species of birds. The first two appendices contain lists of endangered birds upon which the Convention signatories agree as a group; in the third appendix, individual nations may unilaterally list endangered birds. The Act directs the Secretary of the Interior to develop a list of species that may continue to be imported despite their listing in an appendix to the Convention. Before exempting a species, the Secretary must make specific findings regarding the effects of trade on the species, the humane treatment of birds in trade, and the conservation programs of each country of origin. *See* 16 U.S.C. 4905(c).

Plaintiffs seek relief to suspend or invalidate the following exception, contained in the Secretary's implementing regulation, to the prohibition on importation of birds listed in the Convention's appendices:

> This paragraph [enacting the moratorium on importation of birds listed in the appendices] does not apply to an exotic bird species listed in Appendix III to the Convention that originated in a country· that has not listed the species in Appendix III.

58 Fed.Reg. 60524, 60536–37 (Nov. 16, 1993), to be codified at 50 C.F.R. § 15.11(b)(2).[1]

Plaintiffs argue that this provision violates the plain language of the Act, which bars the importation of "any" species listed in "any" appendix to the Convention. Plaintiffs raised their objection during the notice-and-comment period, but defendants did not alter the regulation.

## II.

■ As a preliminary matter, it is necessary to inquire into plaintiffs' standing to bring this action. Although neither party originally briefed the matter of standing, defendants pursued the issue, questioning primarily whether plaintiffs had alleged a sufficient injury to establish standing, after the Court raised standing at the March 7 hearing. In demonstrating their standing to sue, plaintiffs "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). The injury to plaintiffs must be "concrete and particularized." *Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Defendants have not contested that, if plaintiffs can satisfy the *Allen* requirements, plaintiffs have organizational standing to represent their members' interests. *See Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

■ Plaintiffs allege that the regulation they challenge causes a concrete and particularized injury to their members because the deaths and mistreatment of the bird species the regulation partially exempts from the statute's moratorium on importation diminish the numbers of those species, thereby decreasing members' opportunities to observe the birds in the wild. The Supreme Court has held that "the desire to use or observe an animal species, even for purely aesthetic purposes, is undeniably a cognizable interest for purpose of standing." *Lujan,* —— U.S. at ——, 112 S.Ct. at 2137. In particular, *Lujan*

---

1. Plaintiffs also challenge the last sentence of the regulation to be codified at 50 C.F.R. § 15.11(c), because it mirrors the reference of section 15.-11(b)(2) to Appendix III birds that originate in nonlisting countries as standing outside the Act's moratorium. This Memorandum will discuss both provisions at issue as a single regulation.

acknowledged the plausibility of the argument that

> a person who observes or works with animals of a particular species in the very area of the world where that species is threatened by a federal decision is facing [perceptible] harm, since some animals that might have been the subject of his interest will no longer exist.

*Id.* at —— ——, 112 S.Ct. at 2139–40, citing *Japan Whaling Ass'n v. American Cetacean Society,* 478 U.S. 221, 231 n. 4, 106 S.Ct. 2860, 2866 n. 4, 92 L.Ed.2d 166 (1986).

Plaintiffs' original application for a preliminary injunction included the Declarations of Teresa M. Telecky, Ph.D., and Peter M. Knights. Telecky, an Associate Director in the Wildlife and Habitat Protection Section of the plaintiff Humane Society, states that she has an ongoing personal and professional interest in viewing exotic birds and has travelled extensively to observe them. She also provides detailed background on the damage the international bird trade causes to bird species, including Appendix III species. Knights, a freelance environmental consultant and Humane Society member, describes his aesthetic interest in observing wild bird species in Africa and his related economic interest in promoting "ecotourism" there, and he contends that the trade in wild birds harms those interests. He also expressly states his intention to return to Ghana this year to pursue these interests, thereby eliminating the linchpin of the Supreme Court's denial of standing in *Lujan.* *Cf.* —— U.S. at ——, 112 S.Ct. at 2138.

In response to an Order dated March 7, 1994 that requested further briefing on the standing issue, plaintiffs have submitted a supplemental memorandum on standing, with five additional declarations from members of the plaintiff organizations among its exhibits. Among the information contained in these declarations is the following. Arthur Cooley, a member of the plaintiff Defenders of Wildlife, led six extended tours in various parts of the world to observe wildlife, primarily wild birds, in 1993; he plans to lead four such tours in 1994. He thus claims both aesthetic and economic interests in the vitality of wild bird species. Paul G. Irwin, who among his other titles is President of the Humane Society, has made numerous trips to Africa to observe wild birds and plans another such trip later this year. Laura Utley, a Humane Society member, leases a house in Kenya and has an ongoing practice of travelling regularly and extensively throughout Africa; she regularly observes and enjoys wild birds there. Terry C. Pelster, Chairman of the Board of Defenders of Wildlife, is an avid bird watcher who has travelled to Africa and South America and plans return trips to both continents to observe wild birds. All of these declarations contain substantial allegations that the challenged regulation will materially harm the declarants' interests by mitigating the benefits of the Act's moratorium. Plaintiffs' declarations present sufficiently concrete and particularized injuries to satisfy the first prong of the standing inquiry.

Given this showing, defendants do not contest that plaintiffs suffer a concrete and particularized injury to their interest in viewing birds in the wild if the regulation at issue actually threatens to diminish the number of those birds. Defendants therefore attempt to argue that the injuries plaintiffs claim are insufficient to establish standing because plaintiffs have not demonstrated that the regulation threatens wild bird populations. Defendants' argument, which goes to the causation prongs of the standing inquiry, runs directly counter to the logic of the statute itself. Congress imposed the moratorium on importing birds listed in the appendices to the Convention in order to conserve bird species in the wild and to protect exotic birds from inhumane treatment in commercial trade. Plaintiffs, supported by a substantial body of information contained in their numerous declarations, several of which issue from persons with significant knowledge about wild bird habitats and the consequences of the commercial trade in wild bird species, credibly aver that the moratorium accomplishes what Congress explicitly intended it to accomplish. The regulation's injury to plaintiffs' concrete interests is traceable to defendants' allegedly unlawful conduct and likely to be redressed by the relief plaintiffs seek. Plaintiffs therefore have standing.

## III.

█ Plaintiffs contend that defendants' interpretation of the Act is not entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), because the regulation conflicts with the plain language of the statute. *Chevron* deference is not appropriate where "Congress has directly spoken to the precise question at issue." *Id.* In determining whether Congress has directly spoken, the Court is "not required to grant any particular deference to the agency's parsing of statutory language or its interpretation of legislative history." *Rettig v. Pension Benefit Guarantee Corp.,* 744 F.2d 133, 141 (D.C.Cir.1984).

█ The statute states simply that its moratorium applies to "any" species of bird listed in "any" appendix to the Convention. 16 U.S.C. § 4904(c). Defendants argue that this language is "ambiguous" and that the agency is therefore entitled to *Chevron* deference for its "reasonable" interpretation. The statute unambiguously states its restriction. Plaintiffs present legislative history evidence indicating that Congress knew how the Convention's appendices were generated. Moreover, Congress considered and rejected an amendment to the Act that would have defined its reach as defendants would define it here. *See* Pl.Ex. 4. In the course of Congressional hearings on the Act, several parties testified in favor of limiting the scope of the Act's moratorium as to Appendix III species by country of origin, reflecting their understanding that the Act as written extended the moratorium to all Appendix III species regardless of their country of origin. Congress was aware of the differences between Appendix III to the Convention and the other appendices, but it explicitly chose not to draw any distinction among the appendices in stating the reach of the statute. Thus, the statute presents the agency with no ambiguity to interpret.

Because the statute is not ambiguous, defendants argue that Congress' purpose should be inferred from the scope and purpose of the Convention rather than from the words of the Act. Defendants maintain that, because Appendix III differs from Appendices I and II, Congress must have intended to limit the reach of the Act accordingly. Plaintiffs, however, make a convincing case that the relief they seek, besides comporting with the words of the Act, is necessary to effectuate the Act's purposes. For example, birds cross national boundaries and can be pulled across national boundaries by trappers. Therefore, Congress directly served its stated purpose of protecting wild birds by dictating a moratorium on importation of Appendix III birds that is not limited, as Appendix III is, merely to the countries that listed those birds. Because the Act has a context and a legal effect that differ from those of the Convention, the manner in which Appendix III was generated is not dispositive of Congress' intent in drafting the Act.

## IV.

Plaintiffs originally requested a preliminary injunction that would bar defendants from enacting the regulation at issue. At the March 7 hearing, in response to the Court's inquiry, defense counsel stated that, if the contested portion of the regulation was declared invalid, defendants would enact and enforce the remainder of the regulation with the invalid provision severed. Defense counsel also stated that defendants might make additions to the regulation in that event. Plaintiff's counsel stated that a declaration invalidating the contested provision would eliminate the need for injunctive relief at this time. Because defendants have represented that they will abide by the declaratory judgment entered today, no need currently exists for entry of an injunction. The accompanying Order therefore denies without prejudice plaintiffs' application for a preliminary injunction.

## ORDER

For the reasons stated in the accompanying Memorandum, it is this 29th day of March, 1994, hereby

ORDERED: that plaintiffs' motion for summary judgment should be, and is hereby, GRANTED; and it is further

ORDERED: that defendants' motion for summary judgment should be, and is hereby, DENIED; and it is further

DECLARED: that the regulation at issue in this case, published at 58 Fed.Reg. 60524, 60536–37 (Nov. 16, 1993), to be codified at 50 C.F.R. § 15.11(b)(2) and the final sentence of 50 C.F.R. § 15.11(c), violates the language of the Wild Bird Conversation Act of 1992, 16 U.S.C. § 4904(c), and is therefore invalid; and it is further

ORDERED: that plaintiffs' application for a preliminary injunction should be, and is hereby, DENIED without prejudice.